UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DENNIS H. JANES,

                       Plaintiff,

v.                                          6:15-CV-1518
                                          (GTS)
CAROLYN W. COLVIN
Commissioner of Social Security,

                       Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ       PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.             PRASHANT TAMASKAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Dennis H. Janes, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.     **RELEVANT BACKGROUND**

   A.     **Factual Background**

Plaintiff has a high school education, and has past work as an assembly inspector and a vending machine collector. Generally, Plaintiff's alleged disability consists of degenerative disc disease, mood disorder secondary to degenerative disc disease, irritable bowel syndrome, depression, and Crohn's disease.

   B.     **Procedural History**

On June 2, 2014, Plaintiff applied for a period of disability and Disability Insurance Benefits, alleging disability beginning April 28, 2014. (T. 14.)[1] Plaintiff's application was initially denied on August 25, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On February 5, 2015, Plaintiff appeared in a video hearing before the ALJ, Gregory M. Hamel. (*Id.*) On May 8, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-26.) On October 22, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 16-25.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, and has not engaged in substantial gainful activity since April 28, 2014, the alleged onset date. (T. 16.) Second, the

---

[1] Page citations refer to the page numbers used on CM/ECF rather than the parties' respective motion papers.

ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with obesity, Crohn's disease, bilateral carpal tunnel syndrome status post-repair, and depressive disorder. (T. 16-17.) The ALJ found that Plaintiff's hypertension and insomnia are not severe impairments under the regulations. (T. 17.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 17-19.) The ALJ considered Listings 1.04, 5.06, 12.04, and 12.09. (*Id.*)

Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work, as defined in 20 CFR 404.1567(b)[2] except he can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; can use the upper extremities for frequent but not constant handling and fingering; can do routine and repetitive tasks only; and cannot do tasks requiring more than occasional public contact or more than occasional interactions with coworkers.

(T. 19-23.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 24.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to develop the record by not obtaining Plaintiff's medical records from the Veterans Administration for the ten months prior to the ALJ's decision. (Dkt. No. 10, at 9-10 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the

---

[2] Light work requires the abilities to sit for six hours, stand or walk for six hours, occasionally lift and carry up to 20 pounds, and frequently lift or carry up to ten pounds during an eight-hour workday. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251 (1983).

ALJ improperly assessed Plaintiff's credibility. (*Id.* at 10-12.) Third, and finally, Plaintiff argues that the Commissioner violated the regulations by obtaining consultative examinations from non-treating sources without first attempting to obtain consultative examinations from Plaintiff's treating sources. (*Id.* at 12-14.)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ fulfilled his duty to develop the record. (Dkt. No. 13, at 7-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's credibility finding was supported by substantial evidence. (*Id.* at 10-13.) Third, and finally, Defendant argues that the Commissioner's selection of physicians to perform the consultative medical examinations was not legal error. (*Id.* at 13-15.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Failed to Develop the Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 7-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec*., 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason

to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998); 20 C.F.R. § 404.1512(d). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Under the regulations, an ALJ must "make every reasonable effort to help the claimant obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." *Hart v. Comm'r,* 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512[d]) (quotation marks and alterations to original quotation omitted). Accordingly, the ALJ has a duty to seek records from treating sources, "but is not hamstrung by the search's shortcomings." *Merrit v. Colvin*, 142 F. Supp 3d 266, 270 (N.D.N.Y. 2015) (citing *Streeter v. Comm'r*, 07-CV-0858, 2011 WL 1576959, at * 4 [N.D.N.Y. April 6, 2011]). For example, the ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability. *Merrit*, 142 F. Supp 3d at 270 (citing *Whipple v. Astrue*, 479 F. App'x 367, 370 [2d Cir. 2012]); 20 C.F.R. § 404.1520b(c)(1).

Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1520b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *accord Hart,* 2010 WL 2817479, at *5; *Aldrich v. Astrue*, 08-CV-0402, 2009 WL 3165726, *7 (N.D.N.Y. Sept. 28, 2009) ("A treating physician is recontacted only in situations when the evidence received from the treating physician or other

7

medical sources is inadequate for the ALJ to determine whether Plaintiff is disabled.").

Here, there are no obvious gaps in the record that would preclude the ALJ from making an informed decision as to whether Plaintiff is disabled. The record contained (1) Plaintiff's treatment records from the Veterans Administration from June 1, 2006 through July 31, 2014; (2) a consultative physical examination report and opinion from Tanya Perkins-Mwantuali, M.D., dated July 31, 2014 (discussed below in Part III.B of this Decision and Order); and (3) a psychiatric consultative examination report and opinion from Jacqueline Santoro, Ph.D., dated July 31, 2014 (discussed below in Part III.B of this Decision and Order). (T. 203-688.) From this evidence, the ALJ was able to determine that Plaintiff has severe physical and mental impairments that restrict his ability to perform work at the light exertional level, and determine that Plaintiff is not disabled. (T. 14-26.)

Moreover, in a hearing notice dated December 23, 2014, the ALJ instructed Plaintiff and his representative to submit any additional evidence for consideration, however no additional evidence was submitted. (T. 84.) In a notice of hearing reminder dated January 22, 2015, the Commissioner again instructed Plaintiff and his representative that they could submit additional evidence for consideration, but no additional information was submitted. (T. 117.) Finally, at the hearing on February 5, 2015, the ALJ admitted new evidence into the record and asked Plaintiff's representative if she would like to supplement her brief, but neither Plaintiff nor his representative indicated that there was any additional evidence to be considered. (T. 32-33, 48-49.)

As noted above, in addition to the consultative examinations, the record contained over 450 pages of Plaintiff's treating source medical records for the eight years preceding his filing date on June 2, 2014, exceeding the regulations' requirements for a complete medical history.

8

(T. 203-660; 681-87); *see Streeter*, 2011 WL 1576959, at * 4 ("[T]he record includes treating source medical records for the eighteen months preceding Plaintiff's filing, exeeding the regulations' requirements for a complete medical history."); 20 C.F.R. § 404.1512(d). Therefore, the ALJ was not required to seek additional information from Plaintiff's treating sources at the Veterans Administration because the record was adequate to determine whether Plaintiff is disabled. *Rosa*, 168 F.3d at 79 n.5*; Merrit,* 142 F. Supp 3d at 270; *Aldrich*, 2009 WL 3165726, *7; 20 C.F.R. § 404.1520b(c)(1).

For these reasons, the Court finds that the ALJ did not fail to develop the record and remand is not required on this basis.

### B. Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 10-13[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing § 404.1529[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 20.) Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (T. 16-25.)

First, the ALJ considered inconsistencies between Plaintiff's allegations of disabling symptoms and the medical evidence of record, including the medical opinions and examination findings of consultative examiners Dr. Perkins-Mwantuali and Dr. Santoro. (*Id.*) Regarding Plaintiff's physical capabilities, the ALJ noted that Dr. Perkins-Mwantuali opined that Plaintiff had mild limitations in bending and twisting, but identified no other work-related physical limitations. (T. 22, 665.) The ALJ further noted that, upon examination, Dr. Perkins-Mwantuali observed that Plaintiff appeared to be in no acute distress, had normal gait and stance, could walk on his heels and toes without difficulty, and was able to perform a full squat. (T. 22.) Dr. Perkins-Mwantuali further observed that Plaintiff used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and had full motor strength and normal reflexes. (*Id.*)

Regarding Plaintiff's mental capabilities, the ALJ noted that Dr. Santoro opined that despite some mild and moderate mental limitations, Plaintiff could follow and understand simple directions and instructions, perform simple tasks, and learn new tasks. (T. 22, 687.) The ALJ further noted that, upon examination, Dr. Santoro observed that despite Plaintiff's abnormal affect and mood, Plaintiff's thought processes were coherent and goal oriented, his attention and concentration were intact, his recent and remote memory skills were intact, and his insight and judgement were good. (T. 18.)

Second, the ALJ considered Plaintiff's medical treatment, including medication that Plaintiff took to relieve his symptoms. (T. 16-24.) For example, the ALJ noted Plaintiff's reports that appointments with counselor Ms. Wolcott and the prescription medication sertraline helped with his mental health symptoms. (T. 18.) The ALJ noted that Plaintiff takes hydrochlorothiazide for high blood pressure, and a vitamin D supplement, but takes no

11

medication for pain. (T. 20.) The ALJ further noted that while in May 2013 Plaintiff reported low back pain radiating to his bilateral posterior thighs and visited the pain clinic the prior year, he had not followed up at the pain clinic and was taken off his pain medication due to suspected non-compliance. (T. 21.)

Third, the ALJ considered inconsistencies in Plaintiff's reports regarding his symptoms and activities of daily living. (T. 17-18, 20.) For example, the ALJ noted that Plaintiff reported that he was able to dress, bathe, and groom himself, cook and prepare food, perform household chores, do laundry, shop, manage money, drive, and mow his yard with a riding lawn tractor. (T. 17-18, 20.) The ALJ further noted that Plaintiff reported that he socializes with friends, watches television and movies, rides a motor cycle, fishes, occasionally goes out to dinner, and his hobbies include working in the yard and gardening. (T. 17-18, 20.) Accordingly, the Court finds that Plaintiff's reported activities support the ALJ's credibility determination that Plaintiff's alleged symptoms are not disabling.[3]

Finally, the ALJ's credibility analysis credited Plaintiff's "excellent work history" and noted that, while Plaintiff had been using a cane for seven years, he was able to perform medium level work during much of that period of time. (T. 20.) When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the regulations and articulated the inconsistencies that he considered in discrediting Plaintiff's allegations of disabling

---

[3] *See Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (finding that the plaintiff's activities, including childcare, watching television, reading, using the computer, and occasional vacuuming, washing dishes, and driving, supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (finding that the plaintiff's report that she could "cook, sew, wash and shop, so long as she did these chores slowly and takes an afternoon rest" supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling.).

impairments. Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence.

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). Therefore, the Court must uphold an ALJ's credibility determination where, as here, it is supported by substantial evidence. *Aponte*, 728 F.2d at 591. For the foregoing reasons, remand is not required on this basis.

### C. Whether the ALJ Erred in Hiring Consultative Medical Examiners Rather than Contacting Plaintiff's Treating Sources for Consultative Opinions

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 13-15[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"The ALJ has discretion to order a consultative examination to further develop the evidentiary record." *Cox v. Astrue,* 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012) (citing *Serianni v. Astrue*, 07-CV-0250, 2010 WL 786305, at *5 [N.D.N.Y. Mar. 2010]). "While a treating physician is 'ordinarily' the preferred source to perform an additional examination provided that he is 'qualified, equipped, and willing' to do so for the prescribed fee, 20 C.F.R. §§ 404.1519h, 416.919h, this preference is not absolute, and the regulations provide a non-exhaustive list of situations where another source may be consulted, *id.* §§ 404.1519i, 416.919i." *MacGaffick v. Comm'r of Soc. Sec.,* 15-CV-0778, 2016 WL 5417416 at *8, (N.D.N.Y. July 28, 2016) (quoting *McGinnis v. Colvin,* 12-CV-0219, 2013 WL 3353836, at *5 [W.D.N.C. July 3, 2013]).

13

To the extent that Plaintiff may be understood to argue that his physical consultative examination was deficient because it was performed by "a pediatrician," a review of the record indicates that while Dr. Perkins-Mwantuali has a specialty in pediatrics, she listed her primary specialty as internal medicine. (T. 666.) Further, Dr. Perkins-Mwantuali performed a comprehensive internal medicine examination, and properly considered Plaintiff's medical history, complaints, current medications, and daily activities. (T. 662-66.)

Notably, Plaintiff does not indicate that he previously asked the Commissioner to use any of his treating sources as consultants, or timely objected to the use of independent medical examiners. (Dkt. No. 10, at 12-14 [Pl.'s Mem. of Law].) Moreover, while Plaintiff's argument generally references his "treating sources within the Veterans Administration," he does not name any particular treating source that the ALJ should have contacted for a consultative examination. (*Id.*) Under the circumstances, the Court finds that any error in the ALJ's failure to obtain consultative examinations from treating sources, or failure to explain why treating sources were not used as consultants, would be harmless under the circumstances. *MacGaffick*, 2016 WL 5417416 at *8. Therefore, remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 10, 2017
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge